UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**OCEAN MEXICANA, S.A. DE C.V.**             **CIVIL ACTION**

**VERSUS**            **NO. 2:13-CV-06657**

**CROSS LOGISTICS, INC., AND**            **SECTION: "C" (5)**
**CROSS MARITIME, INC.**

## ORDER AND REASONS[1]

Before this Court is defendants Cross Logistics, Inc. and Cross Maritime, Inc.'s (together "Crossgroup") motion to dismiss plaintiff Ocean Mexicana, S.A. DE C.V.'s ("OM") breach of contract, tortious interference with a contract, and tortious interference with business relations claims. Rec. Doc. 8. Plaintiff opposes the motion. Rec. Doc. 9. Having considered the record, the memoranda of counsel and the law, the Court has determined that the defendants' motion to dismiss is PARTIALLY GRANTED and PARTIALLY DENIED.

## I. BACKGROUND

This case arises out of two charter party agreements: one between plaintiff OM and defendant Crossgroup, and another between OM and a third-party, Microperi, S.R.L. ("MS"). Rec. Doc. 1 at 3. According to the complaint, defendant entered into a charter party agreement ("Agreement) to lease the housing barge "Crossmar 7" to plaintiff on September 5, 2013 for a period of three years beginning on October 1, 2013. Rec. Doc. 1 at 3. The Agreement specified that "the effective date of this Agreement shall be deemed to be the date upon which [plaintiff] has executed the Agreement and has paid the advance payment to [defendant] as required under Article 4 of this Agreement." Rec. Doc. 1-2 at 1. According to Article 4, plaintiff should have

---

[1] Cindy Allen, a second-year student at Emory University School of Law, assisted in the preparation of this Order and Reasons.

paid "daily charter hire at fifteen (15) day advance payment at contract signing." Rec. Doc. 1-2 at 2. Plaintiff admits that it did not make the fifteen-day advance payment. Rec. Doc. 8-1 at 2.

Defendant sent a letter to plaintiff cancelling their Agreement on or about September 30, 2013 for failure to tender timely charter payments. Rec. Doc. 1 at ¶ 9. Defendant made no mention of allowing the plaintiff to cure the alleged non-compliance with the Agreement. Rec. Doc. 1 at ¶ 9. On October 3, 2013, plaintiff nonetheless offered to cure any deficiencies in their performance of the Agreement with defendant and demonstrated its ability to do so. Rec. Doc. 1 at ¶ 15. On October 7, 2013, defendant rejected this offer to cure, although plaintiff contends it should have been given a five-day grace period per Article 23 of the Agreement, Rec. Doc. 1 at ¶ 9, 15, and that the Agreement provides for liquidated damages in the event of late payment. Rec. Doc. 9 at 6; Rec. Doc. 1-2 at 3. On this basis, plaintiff alleged a breach of contract. Rec. Doc. 1. Defendant contends that plaintiff has not pled all the elements of a contract because the first charter payment was an unmet condition precedent. Rec. Doc. 8-1 at 4-5. Defendant has moved to dismiss the breach of contract claim pursuant to Fed. Rule of Civ. P. 12(b)(6). Rec. Doc. 8-1 at 8.

Plaintiff had previously chartered the Crossmar 7, and, in turn, plaintiff sub-chartered the barge to MS on May 10, 2013 on a month-to-month basis for a minimum of three months. Rec. Doc. 1 at ¶ 7. On October 1, 2013, MS cancelled its charter party agreement with plaintiff. Rec. Doc. 1 at ¶ 10. Plaintiff asserts that defendant made an independent, clandestine agreement to lease the Crossmar 7 directly to MS and thus committed an act of tortious interference with a contract by terminating MS's existing agreement with plaintiff. Rec. Doc. 1 at ¶ 11. Plaintiff also alleges that defendant's conduct in making its agreement with MS and eliminating plaintiff from

the contractual chain is part of a larger pattern of conduct that qualifies as tortious interference with business relations. Rec. Doc. 1 at ¶ 13.

Defendant argues plaintiff has not shown that it had an effective contract with MS at the time defendant allegedly made its own agreement with MS. Rec. Doc. 8-1 at 2. Plaintiff's contract with MS would have expired on its terms on July 13, 2013—before the Agreement's three-year period would have begun—unless MS had taken its option to extend the lease beyond the initial three-month minimum. Rec. Doc. 8-1 at 2; Rec. Doc. 1-3 at 1. Plaintiff has not alleged that this extension occurred. Rec. Doc. 8-1 at 2. Defendant filed a motion to dismiss the tortious interference claims pursuant to Fed. Rule of Civ. P. 12(b)(6). Rec. Doc. 8 at 1.

Subject matter jurisdiction in this case is based on diversity of citizenship, so this Court would ordinarily apply Louisiana law to any claims not governed by federal maritime law. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). However, the Agreement contains a choice of law provision stipulating that the "Agreement should be governed, construed and interpreted in accordance with the laws of the State of Texas" on those issues where general maritime law is silent. Rec. Doc. 1-2 at 15.  Defendant contends that, since the issue relates to formation of the Agreement and torts beyond the scope of the Agreement, rather than the interpretation of the Agreement, Louisiana law should apply to all of the plaintiff's claims. Rec. Doc. 8-1 at 4-7. Plaintiff contends that Texas law should govern all of its claims according to the choice of law provision. Rec. Doc. 9.

## II. STANDARD OF REVIEW

When considering a motion to dismiss under Rule 12(b)(6), courts accept as true all well-pleaded facts in the complaint, and those facts are viewed in the light most favorable to the plaintiff. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045,

1050 (5th Cir. 1982). However, courts do not accept conclusory allegations as true. *Id*. For a complaint to be viable, it must contain "sufficient factual matter" to make the claim facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A formulaic recitation of the elements of a cause of action" is insufficient. *Id.* (citations omitted). Courts are generally reluctant to grant a motion to dismiss for failure to state a claim, so such motions are only granted when the "plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Kaiser*, 677 F.2d at 1050.

### III. LAW AND ANALYSIS

**A. Breach of Contract Claim**

The choice of law issue is not determinative for defendant's motion to dismiss plaintiff's breach of contract claim. Under both Louisiana and Texas law, the Agreement's stipulation that "the effective date of this Agreement shall be deemed to be the date upon which [plaintiff] has executed the Agreement and has paid the advance payment to [defendant] as required under Article 4 of this Agreement" made the advance payment a condition precedent rather than a covenant.[2] Rec. Doc. 1-2 at 1. Though Texas courts are perhaps slightly more emphatic in their suggestion that conditional language should be used to establish a condition precedent, *see e.g., Criswell v. European Crossroads Shopping Ctr., Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990) (noting that the absence of conditional language "is probative of the parties intention that a promise be made, rather than a condition imposed"), conditional language is not a necessary prerequisite for the creation of a condition precedent in either jurisdiction. *See Standefer v. Thompson*, 939 F.2d

---

[2] The difference in terminology between Texas law—condition precedent—and Louisiana law—suspensive condition—is not a meaningful distinction. *See City of New Orleans v. Tex. and Pacific Ry. Co.*, 171 U.S. 312, 34 (1898) ( "The suspensive condition, under the Louisiana Code, is the equivalent of the condition precedent at common law.").

161, 164 (4th Cir. 1991) ("Catch phrases, although helpful, are unnecessary to create a condition."); *Criswell*, 792 S.W.2d at 948 (conditional language is not a requirement).

Courts do not generally favor construing contractual provisions as condition precedents. *Standefer*, 939 F.2d at 164; *S. States Masonry, Inc. v. J.A. Jones Constr. Co.*, 507 So.2d 198, 201 (La. 1987) (explaining that suspensive conditions not favored). However, a court will sometimes "construe a contract as conditional if its plain language compels [it] to do so." *Standefer*, 939 F.2d at 164. For example, if "the parties to the proposed contract have agreed that the contract is not to be effective or binding until certain conditions are performed or occur, no binding contract will arise until the conditions specified have occurred or been performed." *Parkview Gen. Hosp., Inc. v. Eppes,* 447 S.W.2d 487, 490–91 (Tex.Civ.App. 1969). Also, in determining whether or not a given contractual provision is a condition precedent, courts have a countervailing interest in avoiding surplussage. *See Cedyco Corp. v. PetroQuest Energy, LLC*, 497 F.3d 485, 490 (5th Cir. 2007) ("We must ensure that each provision of the contract is given effect and none are rendered meaningless.").

In the instant case, there is not any specifically conditional language; however, the language creates a condition on its face. The Agreement specifies that "the effective date of this Agreement shall be deemed to be the date upon which [plaintiff] has executed the Agreement **and** has paid the advance payment to [defendant] as required under Article 4 of this Agreement." Rec. Doc. 1-2 at 1 (emphasis added). Reading the advance payment clause as a covenant rather than a condition precedent would render the overall provision about when the Agreement will go into effect meaningless. Thus, the parties' intention that the Agreement would not be binding until plaintiff had made the advance payment is clear, and, due to the plaintiff's failure to pay,

5

the Agreement never became a valid contract.[3] Accordingly, defendant's motion to dismiss the claim of breach of contract is GRANTED.

**B. Tortious Interference Claims**

Louisiana law applies to the tortious interference claims. Due to the unmet condition precedent, the Agreement never went into effect; therefore, the choice of law provision within the Agreement does not control. Instead, this Court must follow Louisiana choice of law analysis because a federal court considering a diversity case must determine which state's law applies by following the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). According to La. Civ. Code Art. 3542, "an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue." This article instructs the Court to consider certain factors in determining which state would be most seriously impaired, "including the place of conduct and injury, the domicile, habitual residence, or place of business of the parties, and the state in which the relationship, if any, between the parties was centered…as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts." La. Civ. Code Art. 3542; *see Marchesani v. Pellerin-Milnor Corp.*, 269 F.3d 481, 486 (5th Cir. 2001).

---

[3] Plaintiff contends that it should have been given the opportunity to cure its non-payment under Article 23 of the Agreement. Rec. Doc. 1 at ¶ 9, 15. Plaintiff also notes that the Agreement provides for liquidated damages in the event of late payment. Rec. Doc. 9 at 6; Rec. Doc. 1-2 at 3. However, given that the Agreement never went into effect, plaintiff is not entitled to the benefits of the rest of the Agreement. *See Centex Corp. v. Dalton*, 840 S.W.2d 952, 956 (Tex. 1992) (holding that a right to enforce never accrued because the contract never went into effect). Moreover, subsequent payments were covenants, not conditions precedent like the fifteen-day advance payment, so the liquidated damages clause applies only to the subsequent payments.

It is undisputed that both plaintiff and defendant are Louisiana corporations with headquarters in Houma, Louisiana, and the relationship between the plaintiff and defendant was centered in Louisiana. Rec. Doc. 8-1 at 10. Plaintiff does not allege that the actions relevant to its claims took place outside of the state of Louisiana. Rec. Doc. 8-1 at 10. Thus, Louisiana would be the state most seriously impaired if its law were not applied to the issue. This Court recognizes that Louisiana law applies to the tortious interference claims.

1. <u>Tortious Interference with a Contract</u>

Louisiana law severely limits the tortious interference with a contract cause of action. *See 9 to 5 Fashions, Inc. v. Spurney,* 538 So. 2d 228, 234 (La. 1989). Generally, the claim must be made against a corporate officer rather than a corporate entity in order to draw a distinction between tort and contract liability. *Id.*; *Technical Control Sys., Inc. v. Green*, 2001-0955 (La. App. 3 Cir. 2/27/02); 809 So. 2d 1204, 1209 (concluding that tortious interference with a contract should not be expanded to include corporate entity defendants). The tortious interference cause of action is only applicable when "imposing a tort duty is more appropriate due to the officer's actions. In an ordinary case, for example, where an officer breaches a contract for the benefit of his corporation and acts within his authority, the corporation…would be liable in contract, not tort." *Technical*, 809 So. 2d at 1208. Thus, "tort actions against corporate entity defendants should be curtailed when a more appropriate breach of contract action is available." *Id.* At least, the defendant must owe the plaintiff "a narrow, individualized duty," *Petrohawk Prop., L.P. v. Chesapeake La., L.P.*, 689 F.3d 380, 396 (5th Cir. 2012), because "a duty must exist for recovery of damages" pursuant to La. Civ. Code Ann. Art. 2315. *Am. Waste & Pollution Control Co. v. Browning-Ferris, Inc.*, 949 F.2d 1384, 1390 (5th Cir. 1991). Whether or not such a duty exists is a question of law. *Id.*

Plaintiff's cause of action for tortious interference with a contract is against a corporate entity, defendant Crossgroup, rather than a particular corporate officer. Rec. Doc. 1 at ¶ 11. Moreover, plaintiff has also not alleged that the defendant owes it "a narrow, individualized duty," nor could it make such an allegation, as plaintiff has not shown that it was actually engaged in a contractual relationship with either the defendant[4] or MS at the relevant time. *Petrohawk*, 689 F.3d at 396; *see also Am. Waste*, 949 F.2d at 1390 (holding that there was not a sufficient relationship on which to base a duty). Plaintiff only contends that "Crossgroup…made an agreement to lease the Crossmar 7 to MS" and that the agreement between the defendant and MS was secretive. Rec. Doc. 1 at ¶ 11, 14. That is, none of plaintiff's claims indicate that defendant acted tortiously or in such a way that the tortious interference claim could not have been subsumed in a breach of contract claim, had plaintiff fulfilled the condition precedent of the contract. Thus, the plaintiff cannot maintain a cause of action for tortious interference with a contract. Defendant's motion to dismiss the claim of tortious interference with a contract is GRANTED.

2. Tortious Interference with Business Relations

Like the tortious interference with a contract cause of action, Louisiana courts have also severely limited the applicability of tortious interference with business relations claims. *See JCD Mktg. Co. v. Bass Hotels & Resorts, Inc.*, 2001-1096 (La. App. 4 Cir. 3/6/02), 812 So. 2d 834, 841. Namely, courts have imposed a malice requirement for tortious interference with business relations claims. *Id*. That is, the plaintiff must "show the defendant acted with actual malice," which suggests the plaintiff must show the defendant acted spitefully or with ill will. *Id*. It has been extremely difficult for plaintiffs to bear the burden of showing that bad feelings rather than

---

[4] The Agreement never became a valid contract because of the aforementioned unmet condition precedent.

8

just profit motivated the defendant; "[i]n fact, there appear to be no reported cases in which anyone actually has been held liable for the tort." *Id.* (quoting Denegre, Jr., et al., *Tortious Interference and Unfair Trade Claims: Louisiana's Elusive Remedies for Business Interference,* 45 Loy. L. Rev. 395, 401 (1999)).

Here, the plaintiff has not alleged any facts that tend to show defendant acted with actual malice. Instead, plaintiff's complaint contains only a conclusory allegation that its "damages resulted from Defendants' gross negligence, **malice**, or actual fraud in entering into a conspiracy to tortiously interfere with OM's existing contractual relationships." Rec. Doc. 1 at ¶ 24 (emphasis added). Insofar as defendants merely entered into a "clandestine agreement . . . to cut out OM from the contractual chain" for their own financial benefit, *id.* at ¶ 14, this is plainly insufficient for purposes of a claim of intentional interference with business relationships. Nevertheless, the Court will grant the plaintiff leave to amend his complaint within ten (10) days to allege specific facts tending to show that defendants acted with actual malice instead of profit motive in interfering with its business relations with MS. Should plaintiff fail to amend within this time, the motion shall be granted and plaintiff's complaint will be dismissed with prejudice. Should plaintiff pursue timely amendment, the defendants may urge a motion to dismiss on different grounds.

Accordingly,

IT IS ORDERED that the motion to dismiss filed by the defendants is PARTIALLY GRANTED and PARTIALLY DENIED.

IT IS FURTHER ORDERED that Plaintiff is given ten (10) days from the issuance of this order to amend his complaint specifying his allegations in support of his claim that the

defendants tortiously interfered with his business relations. Failure to comply with this order shall result in dismissal.

    New Orleans, Louisiana this 30th day of May, 2014.

                                          **HELEN G BERRIGAN**
                                          **UNITED STATES DISTRICT JUDGE**